[Crim. No. 2924. Fifth Dist. Mar. 10, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID ALLEN JACKSON, Defendant and Appellant.

534

## COUNSEL

Paul Halvonik, State Public Defender, under appointment by the Court of Appeal, Gary S. Goodpaster, Chief Assistant State Public Defender, David M. Blackman, Julia Cline Newcomb and Laurance S. Smith, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Charles P. Just, Eddie T. Keller and W. Scott Thorpe, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BROWN (G. A.), P. J.**—Appellant, David Allen Jackson, was convicted by a jury of the theft of a Honda motorcycle (Pen. Code, § 487 (count one)) and of concealing, withholding or selling the same Honda and a

Singer sewing machine (Pen. Code, § 496, subd. 1 (count two)). On this appeal he contends that count two must be reversed because a person cannot be guilty of stealing and of concealing, withholding or selling the identical property. He further argues that the judge improperly relied upon certain information in the probation officer's report in sentencing him and that the evidence showed he was entrapped by the police as a matter of law.

Appellant, aged 19 years, and Elaine Clark, aged 17 years, had been on intimate terms prior to May 1976. During the first week of May, Elaine shared a bedroom with appellant at appellant's mother's apartment. At that time, Elaine owned a green and white 1973 Honda 175 motorcycle, which was valued at over $500 at the time it was taken, and a Singer sewing machine. She had had a tuneup on the Honda and testified that it was in good condition the last time she saw it. While living with appellant, she had given appellant permission to use the motorcycle. Appellant knew the combination to the lock on the Honda, and he also knew how to "hot wire" the cycle. During her stay, Elaine had an accident while driving the Honda. At the time she was "scared and shaking and she broke down . . ." and told appellant he could have it. She gave him the key. Appellant's mother, who witnessed this transfer, expressed doubt as to whether Elaine "meant it" in giving the motorcycle to appellant. However, the next day Elaine got the key back from appellant and told him he could use the motorcycle only as long as they were living together.

On May 9, 1976, after quarreling, Elaine moved out of the apartment, leaving her Honda and sewing machine there. When she came back after two days, on May 11 the Honda was not on the parking lot where she had left it and the sewing machine was not in the apartment. She reported the loss to the Modesto Police Department. She had not given anyone permission to take either the Honda or the Singer sewing machine. Appellant had not had the keys during her absence.

In May 1976 the Modesto Police Department and Stanislaus County Sheriff's office had set up a "store front" operation to purchase stolen property. Videotapes were made of the transactions.

On May 11, 1976, at approximately 4:30 p.m., appellant and several other people, one of whom was Otis Berrington, entered the store. Berrington gave the undercover officer a wallet containing credit cards in return for money. Bob Fear, who was working for the police in return for

having some prior charges not filed against him and his wife, was involved in arranging the transaction. The videotape of the credit card transaction was shown to the jury with the instruction that its purpose was to impeach the defense of entrapment.

The videotape has been viewed. It discloses that initially no questions or persuasion were directed at appellant. The only conversation occurred between Berrington and the police agent, who posed as the "buyer." Berrington and the buyer discussed details on how to use stolen credit cards.

Berrington asked what the buyer was prepared to purchase. The buyer stated he would purchase anything he could resell. Berrington asked whether the buyer would purchase things like 10-speed bicycles.

At this point in the conversation, appellant interjected a question to the buyer. He asked whether the buyer was prepared to purchase a motorcycle right then. The buyer asked appellant how hot it was. Appellant admitted that it wasn't his but belonged to a former girl friend. He also stated he had a sewing machine he could sell.

Appellant offered the other people who were present money if they would help him bring the motorcycle to the store front. When one person agreed to help, appellant indicated he would buy gas for her car as payment.

The conversation between Berrington and the buyer resumed and shifted to topics unrelated to appellant's offer to sell the motorcycle. Without any prompting appellant repeated his offer again. In addition he described the various good points of the motorcycle in an apparent effort to make a better deal. The buyer merely responded by saying he would buy anything they (the people present) had to sell.

The buyer then cautioned those present by saying he was not telling anyone to go out and steal. He said he was merely offering to buy whatever they had to sell. At this point appellant and some of those present left.

After leaving the store front, Bob Fear, appellant and others then went to appellant's apartment where they picked up Elaine's Honda and sewing machine. At approximately 5:30 p.m. they returned to the store. Officer Tucker, acting in an undercover capacity, paid appellant $75 for

the motorcycle and sewing machine. This transaction was also video-taped and the tape was shown to the jury.

Appellant's defense was that Elaine had given him the motorcycle after her accident and that he was entrapped because he would not have sold it unless Fear had asked him to do so. He admitted, however, that Elaine had taken back the key to the Honda and that he never received a pink slip to it.

■ It is manifest that the conviction of concealing, withholding or selling the Honda motorcycle and the sewing machine must be reversed, it being conceded that with recognized exceptions not here applicable an individual may not be convicted of theft and of receiving, withholding or concealing the same stolen property. (*People* v. *Jaramillo* (1976) 16 Cal.3d 752, 758-759 [129 Cal.Rptr. 306, 548 P.2d 706]; *People* v. *Wheeldin* (1969) 276 Cal.App.2d 744, 746-748 [81 Cal.Rptr. 270]; *People* v. *Marquez* (1965) 237 Cal.App.2d 627, 634 [47 Cal.Rptr. 166].)

In *Jaramillo,* conduct forming the basis of the conviction was withholding or concealing, not selling. The court said: "The statute proscribing receipt of stolen property '. . . is directed at those who knowingly deal with thieves and with their stolen goods after the theft has been committed. In other words, it is directed at the traditional "fence" and at those who lurk in the background of criminal ways in order to provide the thieves with a market or depository for their loot. Such offenses are essentially different from the actual theft of property prohibited by section 484. . . . If the legislature had intended in [section 496] to embrace concealment of stolen property by the thief, it would have been a simple matter to say "every thief or any other person . . . who conceals, etc." . . . [¶] A defendant may, of course, be charged with both crimes, but it is for the trier of fact to determine whether he is guilty as a thief or as a non-thief of concealing and withholding.' [Citation.]" (16 Cal.3d at p. 758.)

Thus, as the court emphasizes, receiving, concealing and withholding are separate and distinct criminal activities and are directed at the fence, not the thief. The Supreme Court in *Jaramillo* pointed out to the Legislature the correct way to amend the section if the Legislature desired to include a thief among the people subject to its proscriptions. It said, " '. . . If the legislature had intended in [section 496] to embrace concealment of stolen property by the thief, it would have been a simple matter to say "every thief or any other person . . . who conceals, etc. . . ." ' "

(16 Cal.3d at p. 758.) The Legislature has in fact amended section 496 to add "selling" along with receiving, withholding or concealing as part of the acts prohibited by section 496. The Legislature did not, however, add a thief to the persons who could be guilty of violating section 496.

■ Respondent argues that while receiving, withholding and concealing are inherent in the crime of theft, selling is not, and by the 1976 amendment the Legislature intended to punish the separate act of selling by a thief. We do not agree with that conclusion. If section 496 as expressed in *Jaramillo* is directed at fences, its purpose was to apply to the sale by the fence, not the thief. If the Legislature had intended otherwise it could have easily added the word "thief" to the statute as suggested by the Supreme Court in *Jaramillo*. The courts "presume that the Legislature, aware of judicial decisions, enacts and amends statutes in the light of that knowledge." (*People* v. *Swinney* (1975) 46 Cal.App.3d 332, 341 [120 Cal.Rptr. 148] (disapproved on other grounds in *People* v. *Zamora* (1976) 18 Cal.3d 538, 565, fn. 26 [134 Cal.Rptr. 784, 557 P.2d 75]).)

■ The evidence is conclusive that appellant stole both the motorcycle and the sewing machine, that he stole them for the purpose of selling them, and the theft and sale were parts of a single transaction. Accordingly, the judgment of conviction of violating Penal Code section 496 (count two) must be reversed.

■ Appellant next argues that in sentencing him the trial judge improperly relied upon the probation officer's report which contained evidence of police contacts which were not verified with supporting factual information. (*People* v. *Calloway* (1974) 37 Cal.App.3d 905, 908 [112 Cal.Rptr. 745].) Since *Calloway*, the Supreme Court on two occasions has had the opportunity to speak to this problem. In *People* v. *Chi Ko Wong* (1976) 18 Cal.3d 698 [135 Cal.Rptr. 392, 557 P.2d 976] the court held that evidence of police contacts not leading to arrest or conviction may not be included in the report without supporting factual information. (18 Cal.3d at p. 719; see *Loder* v. *Municipal Court* (1976) 17 Cal.3d 859, 867-868 [132 Cal.Rptr. 464, 553 P.2d 624] (cert. den., 429 U.S. 1109 [51 L.Ed.2d 562, 97 S.Ct. 1143]); and *People* v. *Peterson* (1973) 9 Cal.3d 717, 727-728 [108 Cal.Rptr. 835, 511 P.2d 1187].) Thus, it appears that without supporting factual information and a proper concern for reliability police contacts not leading to arrest or conviction may not be relied upon. However, in *Chi Ko Wong* the court further indicated that

even where unsupported police contacts are included reversal is not required unless by inclusion of police contacts in a probation officer's report the court is actually misled into believing that such references refer to convictions.

"Unlike the situation in *Calloway* where a court could be misled by inclusion of mere police contacts in a report purportedly detailing past convictions, the information presented herein could not have so misled the juvenile court.[18]" (*People* v. *Chi Ko Wong, supra,* 18 Cal.3d 698, 721.) Footnote 18 of the quoted passage provides: "Should allegations of suspected involvement in other crimes be made without adequate factual support, counsel is free to exploit this weakness at the hearing. '[I]f the staff's submissions include materials which are susceptible to challenge or impeachment, it is precisely the role of counsel to "denigrate" such matter. There is no irrebuttable presumption of accuracy attached to staff reports.' [Citation.]"

In *People* v. *Phillips* (1977) 76 Cal.App.3d 207, 215 [142 Cal.Rptr. 658], the court further explicated the principle:

"Thus the fact the probation report contains arrest data is no basis for reversal in the absence of evidence in the record that the trial judge was actually misled into mistaking arrests for convictions. [Citations.] In the instant case there is no evidence the trial judge mistook appellant's arrests for convictions, and appellant's burden of demonstrating error has not been satisfied. . . .

"Even if possible confusion were demonstrated, to justify reversal it must also be shown that the judge materially relied upon such mistaken belief in sentencing the defendant. Numerous cases, including *Calloway* itself, have held that where the sentence was based on other factors any possible confusion of this nature is not prejudicial. [Citations.]"

In the case at bench, at the time of sentencing the trial judge said: "As I read the report they recommend commitment to the California Youth Authority. I am not able to concur in this recommendation. The reasons are clearly on the basis of the fact that the defendant has demonstrated that he is what may be termed in archaic words a scufflaw [*sic*]. He has a history of very, very serious crime in a pattern which is shocking considering his age. He has run the gauntlet of practically all of the

serious crimes, including burglary, receiving, malicious mischief, drunk driving, violations of probation, and had only been released from the California Youth Authority in April of 1976 when the present offense was committed within a period of two months thereafter."

A review of the probation officer's report indicates that each category of offense specifically mentioned in the judge's statement at the time of the sentencing was derived from convictions, arrests or contacts with sufficient data to make those contacts "reliable" under *Chi Ko Wong* as well as detentions which were not supported by explanations and were therefore "unreliable." Convictions, arrests and reliable contacts are properly included in the probation officer's report and may be relied upon by the sentencing judge. (See *People* v. *Chi Ko Wong, supra,* 18 Cal.3d 698, 719.) The record is silent as to whether the judge in sentencing was misled by and relied upon unsubstantiated detentions or whether he properly limited his consideration to the other reliable data in the report. Therefore, we cannot say under the principles of *Chi Ko Wong* and *Phillips* that the appellant has met his burden of establishing that any factually unsubstantiated police contacts contained in the probation officer's report actually misled the judge. The inclusion of such contacts did not result in fundamental unfairness to appellant.

■■ Lastly, appellant contends that the evidence showed the police were guilty of entrapment as a matter of law, arguing that the court should adopt an objective test in determining the validity of the defense. The law is well established, however, that the defense of entrapment is usually a question of fact for the jury (*People* v. *Moran* (1970) 1 Cal.3d 755, 760 [83 Cal.Rptr. 411, 463 P.2d 763]), the crucial test being whether the intent to commit the crime originated in the mind of the defendant or in the mind of the alleged entrapping officer. If the defendant has a preexisting criminal intent the fact that when solicited by a police agent he commits a crime does not show entrapment. (*People* v. *Benford* (1959) 53 Cal.2d 1, 10 [345 P.2d 928].)

The evidence as set forth in the statement of facts, and particularly that part revealed in the videotaped remarks of appellant at the time he visited the police-operated fencing operation, clearly shows that there was substantial evidence to support the jury's conclusion that appellant was not entrapped.

The judgment as to count two (concealing, withholding or selling) is reversed; the judgment as to count one (grand theft) is affirmed.

Franson, J., and Hopper, J., concurred.

The petitions of both parties for a hearing by the Supreme Court were denied May 4, 1978.