[Crim. No. 21433. First Dist., Div. Two. July 1, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH MARTINEZ GARCIA, Defendant and Appellant.

COUNSEL

George M. Kraw, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien and William D. Stein, Assistant Attorneys General, Ann K. Jensen and Morris Lenk, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**TAYLOR, P. J.**—Pursuant to a certificate of probable cause (Pen. Code, § 1237.5), defendant appeals from a judgment of conviction entered on his guilty plea to two counts of burglary (Pen. Code, § 459), one count of possession of stolen property (Pen. Code, § 496) and one count of robbery (Pen. Code, § 211). He contends that: 1) The court erred by denying his motion to suppress (Pen. Code, § 1538.5) the incriminating evidence against him, as it was obtained either during his unlawful detention by the officers or after his arrest without probable cause; and 2) the Penal Code section 496 conviction must be reversed, as he cannot be convicted of stealing and possessing or receiving the same property. For the reasons set forth below, we have concluded that the judgment should be reversed.

The record reveals the following pertinent facts:

About 7:10 p.m. on November 8, 1979, San Jose Police Officers Smith and Buckhout were on routine patrol in an unmarked police car on 6th Street, an area "plagued with burglaries." The area is primarily commercial with a few restaurants and bars but no television rental or repair shops. When Smith and Buckhout saw two men (subsequently identified as defendant and Fonseca) loading a television set into the trunk of a black Ford, they stopped and watched for 10-15 seconds. When defendant and Fonseca noticed the two uniformed officers, each looked shocked; Fonseca began to walk quickly in the direction of the Palm Garden Bar directly across the street; defendant slammed the trunk lid shut and also started walking at a faster than normal pace toward the Palm Garden Bar.

The officers left their vehicle. Buckhout told Fonseca to stop, while Smith said to defendant: "Hey, wait a minute. Can we talk to you for a second?" Defendant kept on walking, although Smith called out several more times. Defendant stopped, looked at the officers and then resumed walking at a quicker pace. Smith ran and grabbed defendant's left arm but defendant pulled away. Smith then grabbed defendant's left arm, placed his right hand under defendant's neck and walked defendant back to the police car. Smith handcuffed defendant, told him he was not under arrest but was being detained to answer some questions about loading the television set. Meanwhile, Fonseca, who also ignored the request to stop, was apprehended by Buckhout and also returned to the police car.

Defendant told the officers that the television set belonged to "the black guy" who wanted defendant to sell it for him. Defendant also told them it belonged to Mr. Madrid, bartender at the Palm Garden. Fonseca told the officers that the television set belonged to defendant.

Several patrons of the Palm Garden came out into the street. Mr. Acosta told Smith that after a "black guy" (who had been driving a grey Chrysler Cordoba) and defendant had argued outside the back of the bar, defendant had approached a group in the bar and asked for help to load a television set. Fonseca agreed to help.

At Buckhout's request, Madrid came out to the street and indicated that: 1) he had loaned the black Ford to defendant to buy cigarettes; and 2) there should be no television set in the Ford. After Madrid opened the trunk of the Ford, the officers inspected the television. The

U-shaped contact clip for the antenna wire was still screwed into place with the frayed ends of the wire attached. Defendant was then arrested for possession of stolen property.

At the police station, Smith and Buckhout learned that earlier the same day, Mr. Elmer Martinez had reported a theft of a television set of the same make and model as the one recovered from the Ford. At the preliminary hearing, Martinez testified that when he returned home about 5:30 p.m. on November 8, 1979, he noticed that his television set was missing and that the antenna wires had been pulled off. Martinez asked defendant (who was his next door neighbor) if defendant had seen anyone take the television set. Defendant replied negatively. Martinez believed the television set recovered from the Ford was his.

After defendant's arrest, he was identified by Ms. Kathy Rockhold at an in-person lineup as one of two individuals who in October 1979, had taken a stereo and jewelry from her house and cash from her purse.

Defendant was charged with two counts of burglary (Pen. Code, § 459), one count of possession of stolen goods (Pen. Code, § 496) and one count of robbery (Pen. Code, § 211) and two prior convictions for burglary (Pen. Code, § 459),[1] and one prior conviction for possession of a controlled substance (Health & Saf. Code, § 11377). Defendant's motion to suppress was denied.

On the date fixed for trial, defendant offered to change his plea to guilty and admit the priors on condition that he would be sentenced to no more than three years and eight months in the state prison. Prior to entry of the changed plea, defense counsel, with court approval, reserved the right to move to strike the Penal Code section 496 count. Defendant then entered a guilty plea as to all charges and the priors. At the sentencing hearing, defense counsel argued that defendant could not be convicted of both stealing and receiving the same property and moved to strike the charge on the Penal Code section 496 count. His motion was denied. The court concluded as a matter of law that the Penal Code section 496 charge was based on activities that occurred after the burglary, sentenced defendant to three years and eight months, and stayed the sentence on the Penal Code section 496 count and the second burglary.

■ Defendant first contends that the court below erred in failing to grant his motion to suppress all of the incriminating evidence against

---

[1]The second burglary count and the robbery count were for the October 1979 incidents involving Ms. Rockhold.

him. In *In re Tony C.* (1978) 21 Cal.3d 888 [148 Cal.Rptr. 366, 582 P.2d 957] (reiterated in *People* v. *Teresinski* (1980) 26 Cal.3d 457 [162 Cal.Rptr. 44, 605 P.2d 874]), our Supreme Court set forth the standard for measuring the validity of a detention. ■ To justify an investigative stop or detention, the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that: 1) some activity relating to crime has taken place or is occurring or about to occur; and 2) the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion but it must be objectively reasonable to do so: the facts must be such as would cause a reasonable police officer in a like position, drawing on appropriate training and experience, to suspect the same criminal activity and the same involvement by the person in question (p. 893).

■ Here, two experienced officers, on routine patrol in an unmarked vehicle, at 7 p.m., observed two individuals loading a television set into a car trunk, in an area "plagued with burglaries." Although the area was a commercial one, there were no television sales, rental or repair shops in the area. The time and neighborhood factors alone are themselves sufficiently "specific and articulable" to justify a detention (*People* v. *Rosenfeld* (1971) 16 Cal.App.3d 619, 622 [94 Cal.Rptr. 380]) as they are "not activities by a citizen." (*People* v. *Bower* (1979) 24 Cal.3d 638, 645 [156 Cal.Rptr. 856, 597 P.2d 115].) While each factor should be viewed with caution as it is subject to abuse (*People* v. *Bower, supra*), the character of the area in terms of the officer's familiarity with activities there and the right time factor combine to provide the environment in which conduct of the defendant must be judged.

Here, Smith and Buckhout were sufficiently suspicious of the television set loading activity of Fonseca and defendant to stop and look. The officers did not attempt to question or detain either one at this time, but merely stopped and observed without any verbal or physical contact.

As defendant and Fonseca became aware of the presence of the unmarked car and the two uniformed police officers, each registered a "shocked look" and then left the Ford at a quickened pace. Defendant paused to slam the trunk lid. Thus, defendant and Fonseca were engaged in activities which amounted to specific and articulable facts which justify detention for a limited investigation (*In re Tony C., supra*, p. 893).

Significantly, defendant and Fonseca's conduct occurred before either officer left the police vehicle or spoke. The underlying facts must reasonably distinguish the suspect from any other citizen at "that time and place" (*People* v. *Moore* (1968) 69 Cal.2d 674, 683 [72 Cal.Rptr. 800, 446 P.2d 800]). A citizen innocently loading a television into a car trunk at 7 p.m., even in an area where there are no establishments dealing with televisions, is not likely to be "shocked" by the nonthreatening observation of his activities by uniformed police officers. Defendant and Fonseca's hurried abandonment of their activities, the quickened pace of their departure, and their refusal to accede to the officers' request to stop was a less than innocent or normal response to the circumstances (cf. *People* v. *Perry* (1979) 100 Cal.App.3d 251, 263 [161 Cal.Rptr. 108]). No detention occurred as a result of the officers' request to speak to defendant and Fonseca (*People* v. *Denman* (1980) 112 Cal.App.3d 1003, 1009 [169 Cal.Rptr. 742]). Although defendant and Fonseca had a right to avoid the officers (*People* v. *Bower, supra*, p. 648), their rapid departure indicated strong evidence of consciousness of guilt (*People* v. *Perry, supra*, at p. 263). Defendant and Fonseca's flight from the police is to be judged in the environment in which the activity took place (*Flores* v. *Superior Court* (1971) 17 Cal.App.3d 219, 223 [94 Cal.Rptr. 496]). We conclude, therefore, that the totality of the circumstances justified the detention and questioning.

Defendant and Fonseca's inconsistent responses as to the ownership of the television set warranted further investigation. Defendant stated that the television set belonged to the "black man" and also to Madrid; Fonseca stated that the television set belonged to defendant. Reasonably, the officers made inquiries of Madrid, who was readily available. After Madrid denied that there was a television set in the trunk of his car, the officers asked him to open the trunk. An inspection of the television set revealed the frayed ends of the antenna wire, indicating a forced removal rather than the normal method of loosening the connecting screw.

Defendant's inconsistent explanation of his possession of a television set, forcefully removed, provided probable cause for the arrest of defendant for possession of stolen property (*People* v. *Martin* (1973) 9 Cal.3d 687, 693 [108 Cal.Rptr. 809, 511 P.2d 1161]). As Madrid consented, the search of the Ford was lawful. It follows that the court below properly denied defendant's motion to suppress.

 Defendant's major contention on appeal predicated on *People* v. *Jaramillo* (1976) 16 Cal.3d 752, 758-759 [129 Cal.Rptr. 306, 548

P.2d 706], is that since the same property was involved in the two counts involving the Martinez television set, his conviction on the Penal Code section 496 count was improper. ██ Contrary to the People's contention, defendant can properly raise this issue on appeal, as it goes to the legality of the proceedings. The record indicates that defendant reserved the issue at all times below and specifically raised it in his certificate of probable cause.[2] ██ We note that the trial court indicated that its conclusion here was based on separate and distinct activities that occurred after the Martinez burglary.[3] However, the evidence adduced at the preliminary hearing indicated only that defendant was loading the television set into the trunk of the black Ford.

In *Jaramillo, supra*, 16 Cal.3d 752, our Supreme Court explained, at page 758, that Penal Code section 496 is directed at the traditional fence and not the thief. The court further pointed out that while a defendant could be charged with both crimes, the trier of fact was to determine whether a defendant is guilty as a thief or nonthief. In addition, the court noted that if the Legislature intended to include the thief within the ambit of Penal Code section 496, it could easily have added the word "thief" to the statute, as suggested by the Supreme Court in *Jaramillo, supra. Jaramillo* has been followed consistently (*People* v. *Jackson* (1978) 78 Cal.App.3d 533, 539 [144 Cal.Rptr. 199]; *People* v. *Campbell* (1976) 63 Cal.App.3d 599, 614 [133 Cal.Rptr. 815]). The Legislature amended Penal Code section 496 as recently as 1980 (Stats. 1980, ch. 1163, § 4) to add certain "swap meet vendors" to the persons who could be guilty, but did not add the thief. We presume that the Legislature, aware of judicial decisions, enacts and amends statutes in the light of that knowledge (*People* v. *Jackson, supra*, p. 539).

The few exceptions to the general rule of *Jaramillo, supra*, which permit conviction of both offenses[4] are not apposite here. Accordingly, we conclude that the court erred as a matter of law in accepting defendant's guilty plea to the Penal Code section 459 and Penal Code section 496 counts.

---

[2]Defendant's challenge as to the Rockhold robbery and burglary (counts 3 and 4) was limited to the search and seizure issue discussed above.

[3]The trial court did not identify these activities.

[4]E.g., a complete "divorcement" between the theft and receipt, such as reacquisition (*People* v. *Tatum* (1962) 209 Cal.App.2d 179 [25 Cal.Rptr. 832]), or a conspiracy between the thief and receiver (*Williams* v. *Superior Court* (1978) 81 Cal.App.3d 330, 345 [146 Cal.Rptr. 311]; *People* v. *Lyons* (1958) 50 Cal.2d 245, 274 [334 P.2d 556]).

Although defendant, by his plea, admitted all of the elements of both crimes (*People* v. *DeVaughn* (1977) 18 Cal.3d 889 [135 Cal.Rptr. 786, 558 P.2d 872]), we have no alternative but to invalidate the entire plea bargain (cf. *People* v. *Preciado* (1978) 78 Cal.App.3d 144, 148-149 [144 Cal.Rptr. 102]). While we have the authority to modify the judgment, we decline to do so. As to the two counts pertaining to the Martinez television set, we are not in a situation where the defendant has been erroneously found guilty of both crimes by a jury, and the record on appeal contains substantial evidence to enable us to determine which conviction can be sustained (*People* v. *Jackson, supra*, 78 Cal. App.3d 533, 542; *People* v. *Perez* (1974) 40 Cal.App.3d 795, 801 [115 Cal.Rptr. 405]). Although defendant sought to withdraw his plea as to the Penal Code section 496 charge and the trial court stayed the judgment on that count, we do not think we can conclude that, given a choice, defendant would have pled guilty to that count.

■ In reversing a judgment based on a plea bargain, the crucial question is whether either party has been deprived of the benefit of the bargain (*People* v. *Collins* (1978) 21 Cal.3d 208, 214-215 [145 Cal. Rptr. 686, 577 P.2d 1026]; Pen. Code, § 1192.5). Here, the People on the day of trial gave up the opportunity to try defendant on all counts and the priors; defendant pled as charged to assure himself a maximum period of incarceration.[5] In any event, defendant cannot be held to a plea bargain that is contrary to the well settled decisional and statutory law of this state (cf. *In re Troglin* (1975) 51 Cal.App.3d 434, 438-439 [124 Cal.Rptr. 234]). On further proceedings, we caution that defendant should not be penalized for properly invoking *Jaramillo* to overturn his erroneous conviction and sentence by being rendered vulnerable to punishment more severe than under his plea bargain (*Collins, supra*, at p. 217).

As to the burglary and robbery counts involving Ms. Rockhold and defendant's priors, the judgment is affirmed; as to the remaining burglary and receiving counts, the judgment is reversed.

Miller, J., and Smith, J., concurred.

A petition for a rehearing was denied July 31, 1981, and the opinion and judgment were modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied October 2, 1981. Bird, C. J., was of the opinion that the petition should be granted.

[5]The court noted that defendant's maximum possible prison sentence on all charges was about seven years.