[Crim. No. 14524. Third Dist. Sept. 5, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
JIMMY LEE STEWART, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to rule 976.1 of the California Rules of Court, the Reporter of Decisions is directed to publish all portions of this opinion except parts II and III.

**COUNSEL**

Brian DeAmicis, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Joel Carey and Karen Ziskind, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SPARKS, J.**—In this case we consider the appropriate remedy on appeal when a jury, which has not been instructed on the point, improperly convicts a thief of both the crime of burglary (Pen. Code, § 459), and the crime of receiving the property stolen in the burglary. (Pen. Code, § 496, subd. 1.) We hold that the appellate remedy in that circumstance is to reverse and vacate the receiving stolen property conviction and affirm the burglary conviction.

After a jury trial defendant Jimmy Lee Stewart was convicted of six counts of first degree residential burglary, and seven counts of receiving stolen property. In the published portion of this opinion we consider defendant's dual contentions that he cannot be convicted of the crimes of burglary and receiving stolen property arising out of the same incidents and that consequently the burglary convictions must either be reversed completely or a new trial ordered on all counts. We agree that under the circumstances of this case defendant cannot stand convicted both as a burglar and for receiving property he stole during the burglary. Defendant, however, misapprehends the remedy for the impermissible convictions. As we shall explain, he is only entitled to have six of the receiving stolen property counts reversed. In the unpublished portion we reject defendant's remaining contentions and consequently shall affirm the judgment in all other respects.

FACTS

On August 1, 1984, defendant moved into an apartment on Hurley Way near Fulton Avenue in Sacramento. In the next few months defendant burgled a number of residences in the area. Defendant's criminal spree began on

August 6, 1984, when Marsha Wooten left her apartment on Hesket Way about 6:15 a.m. When she returned that afternoon she discovered that someone had entered her apartment by removing the screen on a kitchen window and forcing the window open. Personal property was missing. The list of property missing included a television, telephone, necklace charm, earrings and a ring.

Next came the burglary of Cory Walsh's residence. He left his small house on Northrop Avenue about 6 a.m. on August 20th. When he returned home that afternoon he discovered that his house had been burgled. Entry had apparently been made through the kitchen window. Property missing from Walsh's house included two oriental style rugs and a police scanner.

The next burglary occurred on September 7th when Michael Hansen left his home on San Ysidro Way about 10:30 a.m. Later that afternoon his son called him to tell him that someone had broken into their home. It appeared that entry had been made through a window in the den. Property taken from the Hansen residence included Minolta binoculars, a foreign coin collection, a gold heart necklace, a veneer pen case, and an antique watch.

Then came the September 10th burglary of John Bruder's apartment. Bruder lived in a ground level apartment on Fulton Avenue. His mother also lived there, although she was away at the time. Bruder left his apartment about 8:30 a.m. When he returned that afternoon he discovered that someone had burgled his apartment by making entry through a rear window. Included in a list of property taken from Bruder's apartment were a "Playboy" charm, an eagle charm, a sterling silver necklace with a crystal pendant, and sterling silver earrings.

The next victims were William Reynolds and Miyake Hisataka. They lived in an apartment on Wright Street. They left their apartment by 7:30 a.m. on October 31st, and when they returned that evening they discovered their apartment had been burgled. The culprit had apparently entered by prying a screen off of a window. Among the property taken from Reynolds was a Swiss army knife which was engraved with his brother's name, Rick (Scooter) Reynolds. The property taken from Hisataka included a Kodak disc camera.

On November 7th, Kevin Freymeyer and Michael Buich were living on Hesket Way. Kevin's brother, Doug, was visiting them. They were all absent from the house during the day and when Doug returned in the afternoon he discovered that a burglary had occurred. Entry had apparently been made through a bathroom window. Among the property found to be missing were

the receiver and speakers from a stereo set, a kangaroo skin, a Fujika camera, a gold Cross pen and pencil set with red lead in the pencil, and a Sharp calculator.

Three days later the Freymeyers and Buich were again absent from their home. When Doug returned in the afternoon he discovered that a window pane in the kitchen was broken and the grouting had been chipped away. A number of items were missing, including the stereo turntable and cassette deck, a blue and tan comforter, and a gold Cross pen and pencil set with silver tips.

Ronald Parker lived across the street from Freymeyer and Buich. On the morning of November 10th, Parker was sitting in his house reading the newspaper when he observed defendant near Freymeyer's home. He had observed defendant walking in the neighborhood approximately a dozen times, and defendant was almost always wearing a light colored jacket which he was also wearing that morning. Parker noticed that defendant was walking away from Freymeyer's garage area and that he was carrying something which appeared blue and white. Parker identified defendant from a photographic lineup. He also identified defendant at trial as the person he had seen. Finally, he identified the jacket defendant was wearing at the time of his arrest as the jacket worn by the person he had seen.

After the second burglary of his residence Freymeyer spoke with Parker and ultimately referred investigators to him. Information provided by Parker led officers to defendant's apartment. On November 15th, Detective Ballard talked to Paul Chapman, a maintenance man at the apartment complex, who stated that he had seen defendant at the apartment the day before. Ballard went to defendant's apartment where he spoke with Mary Masters, defendant's girlfriend, who said that defendant had moved the prior week and she did not expect him back. Ballard asked for and received consent to search the apartment. He made a cursory search of the apartment but did not locate defendant. During his search he noticed a blue and tan comforter and told Masters that the burglary he was investigating involved a similar comforter. Masters said they had purchased the comforter in Oregon several months before.

Ballard left the apartment and was stopped by Chapman. Chapman advised that defendant had just been at the complex and had left on foot. Ballard drove around the block and located defendant the next street over. Defendant was wearing a light colored jacket similar to the one described by Parker. Detective Ballard spoke with defendant, obtained a detailed description of the comforter stolen in the Freymeyer burglary via radio, and then placed defendant under arrest. Defendant had two gold Cross pens, later identified

by the Freymeyers, on his person. Subsequent searches of defendant's apartment yielded items from each of the burglaries we have recounted above.[1]

Information number 071033 was filed charging defendant with six counts of residential burglary and six counts of receiving stolen property. (Pen. Code, §§ 459, 496.) He was charged with one count of each offense with respect to the Wooten, Walsh, Hansen, and Bruder incidents, and with two counts of each offense arising out of the two Freymeyer incidents. The information also alleged one prior conviction for robbery, a serious felony within the meaning of Penal Code sections 667 and 1192.7, subdivision (c). Subsequently another information, this one numbered 071085, was filed charging defendant with receiving stolen property arising out of the Reynolds-Hisataka incident. That information also charged defendant with petty theft from Payless Drug Store, with a prior robbery conviction. (Pen. Code, § 666.) Defendant was further charged there with burglary of the Payless Drug Store.

With respect to information number 071085, count one was severed from counts two and three and was consolidated for trial with information number 071033. A jury found defendant guilty on the 12 counts in information number 071033, and of the first count in information number 071085. On motion of the prosecutor the allegations of a prior conviction and counts two and three of information number 071085 were dismissed. Defendant was sentenced to state prison for a total unstayed term of 12 years and 8 months.

DISCUSSION

I

As we have noted, defendant was convicted of both the crime of burglary and the offense of receiving the property stolen during the burglary in each

---

[1]That defendant was in possession of property stolen during each of the above recounted burglaries was established by evidence which was overwhelming. Most of the stolen property had unique identifying characteristics which enabled the victims to make positive identifications. For example, the Swiss army knife had its owner's name engraved on it. Doug Freymeyer's Cross pen and pencil set were unique in that he had put red lead in the pencil and had removed "T.R.W." company logo from the clips, leaving distinctive holes. He still had the logos which matched the holes in the clips. The victims used various other unique characteristics to identify their property. The items of property we have set forth above as having been taken in each burglary were not the only ones stolen. With the exception of the Freymeyer stereo system, however, they were the items recovered from defendant and identified by the victims. The Freymeyer stereo had independent evidentiary significance in that it appeared that the motive for the second Freymeyer burglary was to steal the remainder of the stereo system since only the receiver and speakers were taken in the first burglary.

of six incidents. He contends that it is improper to permit him to be convicted of both burglary and receiving stolen property. The People concede this argument. We find ample appellate authority to support defendant's contention and the concession by the People. (See *People* v. *Jaramillo* (1976) 16 Cal.3d 752, 759 [129 Cal.Rptr. 306, 548 P.2d 706]; *People* v. *Lawrence* (1980) 111 Cal.App.3d 630, 639 [169 Cal.Rptr. 245]; *People* v. *Jackson* (1978) 78 Cal.App.3d 533, 539 [144 Cal.Rptr. 199]; *People* v. *Campbell* (1976) 63 Cal.App.3d 599, 614 [133 Cal.Rptr. 815]; *People* v. *Perez* (1974) 40 Cal.App.3d 795, 800 [115 Cal.Rptr. 405]; *People* v. *Morales* (1968) 263 Cal.App.2d 211, 215 [69 Cal.Rptr. 553].)[2] These cases establish the proposition that a thief cannot be convicted of receiving the property which he stole. This rule applies not only when the crime of theft is jointly charged with that of receiving stolen property but also when burglary is joined with a receiving count. ■ "Where the information charged burglary in one count and receiving stolen property in another count, there can be no lawful adjudication of guilt of the latter crime where the evidence shows that the property 'received' was some or all of the identical property taken and asported in the burglary." (*People* v. *Perez, supra,* 40 Cal.App.3d at p. 800; citation omitted.)

---

[2]This rule has been applied in burglary and receiving stolen property cases even though theft of property is not an element of the crime of burglary (*People* v. *Tatem* (1976) 62 Cal.App.3d 655, 658 [133 Cal.Rptr. 265]), and proof that the property was stolen by someone other than defendant is not an element of the crime of receiving stolen property (*People* v. *Williams* (1967) 253 Cal.App.2d 952, 958 [61 Cal.Rptr. 238]). (See, e.g., *People* v. *Lawrence* (1980) 111 Cal.App.3d 630 [169 Cal.Rptr. 245]; *People* v. *Perez, supra,* 40 Cal.App.3d at p. 800; *People* v. *Lohman* (1970) 6 Cal.App.3d 760, 767-768 [86 Cal.Rptr. 221].) Were we to write upon a clean slate we might consider a different approach. Under Penal Code section 654 a course of conduct undertaken with a single intent and objective that violates more than one statute may be punished only once. (*People* v. *Beamon* (1973) 8 Cal.3d 625, 637 [105 Cal.Rptr. 681, 504 P.2d 905].) Although a defendant may be convicted of both violations, punishment for one must be stayed. (*Id.,* at p. 640.) This principle has been applied in instances where the defendant has committed both burglary and robbery, and where he has committed burglary and grand theft. (See, e.g., *People* v. *Lee* (1980) 110 Cal.App.3d 774, 785 [168 Cal.Rptr. 231]; *In re Maurice H.* (1980) 107 Cal.App.3d 305, 312 [166 Cal.Rptr. 213].) It would seem to follow that where a defendant has committed burglary, and has also committed acts which fulfill all of the elements necessary for a conviction under Penal Code section 496, it would be permissible to convict him of both violations but to stay the punishment for one offense. Nevertheless, a long and unbroken line of authority holds that a thief cannot be convicted of receiving the property he stole. The Supreme Court endorsed this precept in *People* v. *Jaramillo, supra,* 16 Cal.3d 752, and rejected a contention that a stay of punishment is the appropriate remedy. (*Id.,* at p. 757.) Although the *Jaramillo* opinion did not deal with the crime of burglary and only asserted that a person cannot be convicted "of stealing and of receiving the same property," the Courts of Appeal have extended its rationale to preclude conviction for both burglary and receiving stolen property where the burglarious intent is to steal the property which is the subject of the receiving charge and the burglar in fact steals the property in the course of the burglary. (*People* v. *Lawrence, supra,* 111 Cal.App.3d at p. 639; *People* v. *Perez, supra,* 40 Cal.App.3d at p. 801.) Under principles of stare decisis we will not reconsider these decisions at this late date. (*People* v. *Savala* (1981) 116 Cal.App.3d 41, 60-61 [171 Cal.Rptr. 882].)

Part of the reason for the rule is found in the language of the statute. Penal Code section 496, subdivision 1 provides in relevant part that "[e]very person who buys or receives any property which has been stolen or which has been obtained in any manner constituting theft . . ., knowing the property to be so stolen or obtained, or who conceals, sells, withholds or aids in concealing, selling, or withholding any such property from the owner, knowing the property to be so stolen or obtained, is punishable by imprisonment in a state prison . . . ." As the Court of Appeal held in *People* v. *Tatum* (1962) 209 Cal.App.2d 179 [25 Cal.Rptr. 832], "[c]learly a thief may not be convicted under section 496, subdivision 1 of the Penal Code of 'buying' or 'receiving' the goods which he has previously stolen . . . ." (*Id.*, at p. 183, citations omitted.) This is because "the word 'receive' implies two persons, to the end that it must be proved that defendant received the goods from somebody." (*People* v. *Marquez* (1965) 237 Cal.App.2d 627, 637 [47 Cal.Rptr. 166].) The word "buys" similarly implies that there is a second party who purchases the stolen goods from the thief. Just as a thief cannot receive from himself, he cannot buy from himself.

The terms "conceals" and "withholds," however, do not necessarily imply the existence of a person other than the thief (*People* v. *Marquez, supra,* 237 Cal.App.2d at p. 637), and the rule therefore has a different genesis as to those terms. Its genesis lies in the perceived purpose of the receiving statute. "In our view, this section is directed at those who knowingly deal with thieves and with their stolen goods after the theft has been committed. In other words, it is directed at the traditional 'fence' and at those who lurk in the background of criminal ways in order to provide the thieves with a market or depository for their loot. Such offenses are essentially different from the actual theft of property prohibited by section 484. Every theft, every wrongful misappropriation, of necessity, contemplates and involves a permanent withholding from the owner. To conceal and withhold is the thief's purpose from the very moment that he gains possession of the property. It is part and parcel of the theft. But such concealment and withholding is not that envisaged by section 496." (*People* v. *Tatum, supra,* 209 Cal.App.2d at p. 183.) Consequently, Penal Code section 496 has been construed "as a statute directed primarily at persons who do not physically participate in the actual theft of property." (*Id.*, at p. 184.) The Supreme Court later confirmed the *Tatum* court's construction by quoting it in *Jaramillo*: "'If the legislature had intended in [section 496] to embrace concealment of stolen property by the thief, it would have been a simple matter to say "every thief or any other person . . . who conceals, etc."'" (*Jaramillo, supra,* 16 Cal.3d at p. 758.)

In 1972 the Legislature amended Penal Code 496 and added the terms "sells" and "aids in concealing, selling, or withholding." (Stats. 1972,

ch. 963, § 1, p. 1739.)[3] In *People* v. *Jackson, supra,* 78 Cal.App.3d 533, the Attorney General argued that "while receiving, withholding and concealing are inherent in the crime of theft, selling is not, and by the . . . amendment the Legislature intended to punish the separate act of selling by a thief." (*Id.,* at p. 539.) The Court of Appeal disagreed. "If section 496 as expressed in *Jaramillo* is directed at fences, its purpose was to apply to the sale by the fence, not the thief. If the Legislature had intended otherwise it could have easily added the word 'thief' to the statute as suggested by the Supreme Court in *Jaramillo.*" (*Ibid.*)

As construed by these decisions, Penal Code section 496 simply does not apply to the thief who stole the property in question. ■ There are exceptions to this construction and the rule that a thief cannot receive stolen property from himself. For example, a conviction for receiving stolen property may be permitted where there is a complete divorcement between the theft and a subsequent receiving, such as where the thief has disposed of the property and subsequently receives it back. (*People* v. *Jaramillo, supra,* 16 Cal.3d at p. 759, fn. 8.)[4] However, absent such a complete divorcement between the theft and subsequent actions, the mere fact that subsequent to the theft the thief does acts which would otherwise constitute the elements of a violation of Penal Code section 496 does not permit his conviction under that section. (*Jaramillo, supra,* at p. 759; see *People* v. *Jackson, supra,* 78 Cal.App.3d at p. 539.)

■ The trial court made a postconviction finding that defendant engaged in acts of concealing or withholding the stolen property separate from the acts of taking the property. Two flaws are embedded in that finding. First, whether defendant engaged in separate criminal acts divorced from the original theft which render him liable to a separate conviction for the crime of receiving stolen property is a question for the jury under proper instructions and not the judge. (*People* v. *Taylor* (1935) 4 Cal.App.2d 214, 219 [40 P.2d 870].) This restriction is simply a reflection of the fundamental principle that "a defendant has a constitutional right to have the jury determine every material issue presented by the evidence." (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 720 [112 Cal.Rptr. 1, 518 P.2d 913].) Second, the evidence did not support the finding in any event. To be sure defendant's

---

[3]The addition of the phrase "aids" does not appear to add anything to the criminal liability already imposed under Penal Code section 31 upon principals who "aid and abet" the commission of crimes.

[4]Another exception is said to arise when the thief conspires with the receiver. "Also when a conspiracy between the thief and the receiver is established, the thief may be convicted for both conspiracy and receiving." (*People* v. *Jaramillo, supra,* 16 Cal.3d at p. 759, fn. 8; citations omitted.) Because none of the exceptions was shown by the evidence in this case, we have no occasion to examine them further.

acts of concealing and withholding the stolen property were subsequent in time and separate from the initial acts of taking the property. Nevertheless, there is no evidence with respect to any of the incidents of such a "complete divorcement" between the thefts and the subsequent acts such that convictions for both burglary and receiving stolen property may be upheld. Accordingly we agree with defendant's contention that he should not stand convicted of both burglary and receiving stolen property in the incidents charged in information number 071033.

But defendant is not satisfied with half a loaf. He argues that either the burglary convictions must be reversed or all the convictions must be reversed. While the authorities agree that a defendant may not be convicted for stealing and for receiving the same property, confusion has arisen over the appropriate remedy. In *People* v. *Morales, supra,* 263 Cal.App.2d at pages 214 and 215, the court held that a jury should be instructed that it should not find the accused guilty of receiving property which he stole. The court further held that in the absence of such an instruction "it is impossible to know" which offense the jury would have found and reversal is required for all counts. Other courts in cases where the jury has not been instructed have searched the record to determine whether it appears the jury would have convicted the defendant of the theft or of the receiving charge. If satisfied that a properly instructed jury would have convicted defendant of burglary, these courts reverse the receiving count and leave the burglary conviction intact. (See e.g., *People* v. *Jackson, supra,* 78 Cal.App.3d at p. 539; *People* v. *Campbell, supra,* 63 Cal.App.3d at p. 614; *People* v. *Perez, supra,* 40 Cal.App.3d at p. 801.)

In our view these authorities misconceive the issue when the jury has not been instructed and consequently add unnecessary difficulty to the appellate task. They approach the issue on the assumption that theft, or a theft-related offense, and receiving stolen property are mutually exclusive offenses. They are not. ▮ The rule is that a thief may not be convicted of receiving the property he stole even though he has otherwise committed all of the acts with the requisite knowledge to constitute the offense. The converse is not true. There is nothing whatsoever which would preclude an uninstructed jury from finding that an accused is the actual thief simply because it also believes that he has committed acts which would otherwise constitute a violation of Penal Code section 496.[5] Here the jury was instructed that burglary is committed where a person enters an inhabited dwelling with the intent to steal and take away someone else's property and to permanently

---

[5]Of course, if the jury were correctly instructed that the thief may not be convicted of receiving the property he stole then, in the absence of any exception to the rule, verdicts of both burglary and receiving stolen property would be inconsistent.

deprive the owner of the property. (CALJIC No. 14.50 (1981 rev. ed.).) The jury was further instructed that a violation of Penal Code section 496 occurs where a person has bought, received or withheld stolen property, or has concealed or aided in concealing such property, knowing the property to have been stolen. (CALJIC No. 14.65 (1979 rev. ed.).) Under these instructions, there is nothing inconsistent in finding that an accused has committed acts with the requisite intent and knowledge to constitute both offenses. Consequently, in the absence of an instruction on the question, it is the conviction for theft or a theft-related offense which has the preclusive effect and not vice versa.[6]

When the issue is placed in the proper perspective the remedy in circumstances such as these becomes clear. ■ It is fundamental that a judgment should not be reversed for error unless there has been a miscarriage of justice. (Cal. Const., art. VI, § 13.) Where a jury has been properly instructed on all of the elements necessary to constitute an offense and based upon substantial evidence has made findings sufficient to establish the defendant's guilt, and has made no inconsistent findings, then reversal is not appropriate despite some procedural or instructional error which did not affect those findings. (*People* v. *Garcia* (1984) 36 Cal.3d 539, 555 [205 Cal.Rptr. 265, 684 P.2d 826]; *People* v. *Sedeno, supra,* 10 Cal.3d at p. 721.) This is such a case. The jury was properly instructed on the burglary charges. It found, based upon substantial evidence, that defendant was the burglar. If the jury had been properly instructed on the rule that a thief cannot be a receiver, it undoubtedly would not have returned guilty verdicts on both the burglary and receiving stolen property charges. But nothing in the jury's findings that all of the elements of the receiving charges were proven in any way impeaches its findings that defendant was also the burglar. ■ Accordingly the appropriate remedy is to reverse only the convictions for receiving stolen property.

Our approach to the issue is consistent with that applied in analogous areas. For example, in *People* v. *Moran* (1970) 1 Cal.3d 755, at pages 762 and 763 [83 Cal.Rptr. 411, 463 P.2d 763], the defendant was charged with selling LSD and the jury was also instructed on possession of LSD as a lesser included offense. The jury was not told to return only one verdict, and it found the defendant guilty of selling LSD and of possession of LSD.

---

[6]When a defendant is charged with burglary and receiving stolen property in circumstances where conviction for both offenses is prohibited, "the jury should be given appropriate instructions defining and distinguishing the rules applicable, so as to avoid the mistake of finding the accused guilty of receiving from himself property stolen by him during the commission of a burglary." (*People* v. *Taylor, supra,* 4 Cal.App.2d at p. 219.) The rule, and hence the appropriate instruction, should advise the jury that it is a conviction for burglary which precludes a conviction for receiving stolen property, so that the jury will be adequately informed on how to perform its task.

The conviction for possession did not conflict with the conviction for selling and was not an implied acquittal of the greater charge. Accordingly the only remedy to which the defendant was entitled was to have the possession conviction reversed.

A closely analogous situation arose in *People* v. *Francis* (1982) 129 Cal.App.3d 241 [180 Cal.Rptr. 873]. There the defendant was charged with murder and with being an accessory to murder. A person cannot legally be an accessory to a crime in which he is a principal, but the trial court failed to instruct the jury to return only one verdict. The jury returned guilty verdicts on both charges and the defendant insisted he was entitled to reversal of both convictions. This court properly recognized that the charge of murder and the charge of being an accessory to murder are not mutually exclusive, that is, the elements of murder and of being an accessory are not inconsistent with each other. A person cannot be convicted of being an accessory to a murder he committed simply because the Legislature, in proscribing the conduct of an accessory, did not intend to embrace the conduct of the principal felon. Since the murder verdict was supported by substantial evidence and was otherwise error-free the only remedy provided the defendant was to vacate the accessory conviction. (129 Cal.App.3d at pp. 251-253. See also *People* v. *Laskiewicz* (1986) 176 Cal.App.3d 1254, 1257-1258 [222 Cal.Rptr. 686]; but see *People* v. *Prado* (1977) 67 Cal.App.3d 267, 274 [136 Cal.Rptr. 521].)

Our approach is also consistent with that of the Supreme Court in *Jaramillo* itself. There the defendant was convicted of the unlawful taking or driving a vehicle (Veh. Code, § 10851), and of receiving stolen property. The court recognized that a thief cannot also be convicted of receiving the stolen property and that if the Vehicle Code conviction was predicated on conduct that constituted theft then the receiving conviction could not stand. However, the Vehicle Code conviction could have been predicated on various types of conduct, only some of which would constitute theft.[7] If the Vehicle Code

---

[7]Vehicle Code section 10851, subdivision (a) provides in part: "Any person who drives or takes a vehicle not his own, without the consent of the owner thereof, and with intent either permanently or temporarily to deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle, . . . is guilty of a public offense . . . ." As the *Jaramillo* court noted, it is clear "that when an accused is convicted of a violation of Penal Code section 487, subdivision 3 [grand theft automobile], which *necessarily* requires a finding that the accused intended to steal, he cannot also be convicted of receiving that same stolen property. If, on the other hand, in convicting an accused of a violation of Vehicle Code section 10851, a jury finds that the accused intended only to temporarily deprive the owner of possession for the purpose of driving a vehicle, then the accused may also be guilty of a violation of section 496, subdivision 1, if there is other evidence which establishes the elements of that crime—including evidence of the independent theft of the vehicle and the accused's knowing receipt thereof." (*Jaramillo, supra,* 16 Cal.3d at pp. 758-759, italics in original, fn. omitted.)

conviction were predicated on conduct that did not constitute theft then both convictions were proper. The court gave the People the option of retrying the defendant on both charges in order to produce evidence which would support both convictions, and if the People did not choose to retry the defendant then the trial court was directed to reinstate the Vehicle Code conviction. (16 Cal.3d at p. 760.) The court clearly recognized that where the defendant is convicted both of theft and of receiving it is proper "to require that defendant stand convicted of [theft], as the record reflects substantial evidence in support of an error-free conviction of that offense." (*Id.*, at pp. 760-761, fn. 11.)

One final point of clarification is necessary. Defendant contends that if he is not entitled to a retrial on all charges then it is the burglary charges which must be reversed since receiving stolen property is a lesser offense than burglary. This argument finds some support in the language in *People v. Briggs* (1971) 19 Cal.App.3d 1034, at page 1037 [97 Cal.Rptr. 372]. A contrary indication is found in *People* v. *Lawrence, supra,* 111 Cal.App.3d at page 640, where the court indicated that the receiving conviction, as the lesser offense, should be reversed. In fact, it is irrelevant which is the lesser and which the greater offense. As we have noted, theft or theft-related offenses and receiving stolen property are not mutually exclusive offenses; it is the theft or theft-related offense which has the preclusive effect. Thus, if the defendant is found to be the thief he cannot be convicted of receiving the same property, and where he is so convicted it is the receiving conviction which is improper. For this reason it is always the receiving conviction which cannot stand, regardless whether it is the lesser or the greater offense.

We have examined the record and find substantial evidence to support defendant's conviction for the burglaries charged in information number 071033, and those convictions will be affirmed. Since defendant cannot be convicted of receiving property which he stole, the receiving stolen property convictions in information number 071033 will be reversed. This reversal does not include and shall not affect the conviction for receiving stolen property charged in information number 071085.

## II, III*

. . . . . . . . . . . . . . . . . . . . . .

### CONCLUSION

In information number 071033 defendant was charged with 12 counts arising out of 6 incidents. In each incident he was charged with burglary

---

*See footnote, *ante*, page 197.

and with receiving property stolen in the burglary. Since defendant was found by the jury to be the burglar it was improper to convict him also of receiving the stolen property and the receiving convictions must be reversed with directions to vacate the verdicts. Since defendant received concurrent terms on the receiving counts this reversal does not affect his total unstayed prison term. Nor does this reversal affect the conviction for receiving stolen property charged in information number 071085.

The judgment is reversed with respect to the convictions for receiving stolen property in violation of Penal Code section 496 charged in counts two, four, six, eight, ten, and twelve of information number 071033, and the trial court is directed to vacate the verdicts with respect to those counts. In all other respects the judgment is affirmed. The trial court is directed to prepare and forward to the Department of Corrections an amended abstract of judgment.

Puglia, P. J., and Blease, J., concurred.