[No. B097698. Second Dist., Div. Four. Dec. 23, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
KELLY JON LANDIS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts B., C., D., E., F., and G. under the Discussion heading.

**COUNSEL**

Kelly Jon Landis, in pro. per., and Mark R. Lippman, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, William T. Harter and B. Kathleen Blanchard, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BARON, J.—**

### RELEVANT PROCEDURAL BACKGROUND

On July 25, 1995, an amended eight-count information was filed against appellant Kelly Jon Landis. Counts 1 and 2 charged appellant with stalking in violation of Penal Code section 646.9, subdivision (b). Counts 3 and 4 charged appellant with first degree residential burglary in violation of Penal

Code section 462, subdivision (a). Counts 5, 6, and 8 charged appellant with second degree vehicular burglary in violation of Penal Code section 459. Finally, count 7 charged appellant with receiving stolen property, in violation of Penal Code section 496, subdivision (a). Appellant pleaded not guilty.

Trial by jury commenced on July 31, 1995. On August 14, 1995, the trial court determined that the jury was deadlocked on counts 1 and 2, and declared a mistrial as to these counts. On the same date, the jury found appellant guilty on counts 3 through 8.

On October 24, 1995, appellant was sentenced to prison for a term of six years, including a four-year sentence as to count 3, a sixteen-month sentence as to count 4, and an eight-month sentence as to count 7, to run concurrently with eight-month sentences as to counts 5, 6, and 8. This appeal followed.

FACTS

A.   *Prosecution Evidence*

Appellant met Karl Rosenquist in May 1993. At that time, Rosenquist was a doctoral student at University of California, Los Angeles (UCLA), and appellant was a student at University of Southern California. Rosenquist spent the night at appellant's house, and for the next few months the two men were on friendly terms. Rosenquist testified that he and appellant had three sexual encounters during the entire time he knew appellant, and that no "mutual love" transformed these encounters into a sexual relationship.

Some incidents soon made Rosenquist "think twice" about his friendship with appellant. When they traveled together to attend a football game, appellant became abnormally angry when Rosenquist rebuffed a sexual advance. During a visit to Rosenquist's friend in Louisiana, Steve Morrison, appellant sulked and refused to speak to Rosenquist and Morrison. In early 1994, appellant located Rosenquist and Morrison, then on a hiking trip, by phoning all the hotels along Interstate 15 between Los Angeles and Provo, Utah. In February 1994, sometime after Rosenquist had briefly lent appellant the key to Rosenquist's apartment so that appellant could feed Rosenquist's cat, Rosenquist discovered appellant sitting in the dark in Rosenquist's apartment.

On March 15, 1994, Rosenquist received a phone call from Dr. Timothy Fishbeck, appellant's psychiatrist. Rosenquist met with Fishbeck, who told him that appellant had a dangerous obsession with Rosenquist. Fishbeck

informed Rosenquist that appellant was breaking into his apartment and Xeroxing his journals, in which Rosenquist kept personal writings, poems, story ideas, screenplay ideas, and similar material. Fishbeck also revealed that appellant had a fantasy about kidnapping Rosenquist, and that he had been talking to "surveillance equipment" people about tapping Rosenquist's phone. Rosenquist assisted Fishbeck in convincing appellant to admit himself to a hospital for treatment, and then at Fishbeck's suggestion retrieved surveillance manuals and copies of Rosenquist's journals from appellant's apartment.

Rosenquist told appellant he would stand by him as long as appellant followed the hospital's medication regime. Appellant improved for a time, but became snappy and angry after apparently running out of his medication. Rosenquist then tried to withdraw from appellant.

On May 29, 1994, while Rosenquist was taking care of his parent's house, appellant entered the house over Rosenquist's objections, and Rosenquist was forced to call the police. Appellant began to phone Rosenquist compulsively and to bang on Rosenquist's apartment door, threatening suicide. Aside from occasionally offering appellant comfort, Rosenquist tried to avoid contact with appellant, and he told appellant that he did not want a serious or long-term relationship with him. After Rosenquist made an abortive attempt to return appellant to his medication regime, Rosenquist decided he could not have a friendship with appellant.

Rosenquist had little contact with appellant between August 1994 and February 1995. Appellant continued to phone Rosenquist, even when Rosenquist traveled, and Rosenquist urged him to seek help. In September 1994, Rosenquist filed his dissertation and became a lecturer at UCLA.

On February 12, 1995, Rosenquist returned from a trip and found that someone had unlocked his apartment door and tampered with his answering machine. He phoned appellant, who said, " 'If you call the police, I'll light a match.' " Rosenquist discovered that his journals were missing, along with some computer disks and a copy of his dissertation. Rosenquist asked for these materials back. Appellant returned the computer disks, but not the journals.

On February 18, 1995, appellant appeared at Rosenquist's apartment door with a bag and offered to return a volume of the journal if Rosenquist would let appellant in and give him a hug. Rosenquist opened his door slightly. Appellant pushed his way into the apartment and during the ensuing struggle appellant hit Rosenquist in the face. After appellant had left, Rosenquist's

father found Rosenquist, phoned appellant, and asked for the journals. Appellant replied that he would not return them and that Rosenquist had hurt him.

Thereafter, Rosenquist did not let appellant into his apartment, and at Rosenquist's direction, the apartment manager turned appellant away from the building. Nonetheless, appellant continued to knock at Rosenquist's door at night. On March 2, 1995, Rosenquist heard the rustling of keys outside his door, followed by scraping outside his window. He saw appellant on a ladder climbing up to his window. Appellant noticed Rosenquist and left.

On March 3, 1995, Rosenquist's briefcase containing student exams and his new phone number was stolen from his office at UCLA. Appellant called Rosenquist's office. One of Rosenquist's colleagues answered the phone and demanded the return of the exams. Following appellant's directions, Rosenquist and his colleague recovered the briefcase and exams sans phone number in a UCLA parking structure.

On March 7, 1995, Rosenquist sought and obtained a temporary restraining order concerning appellant. At the same time, Rosenquist moved to a new apartment located on a higher level in his apartment building. On March 22, 1995, Rosenquist obtained a permanent mutual restraining order.

On April 5, 1995, Rosenquist filed a complaint with the police following a threatening phone call from appellant. As a result, Rosenquist had a phone trap placed on his phone. In April 1995, appellant made as many as 25 phone calls to Rosenquist on some days.

On April 6, 1995, appellant approached Rosenquist as Rosenquist went to his car. Appellant asked Rosenquist to record his lecture on a small tape recorder and offered him a watch and sweatshirt he had recently taken from Rosenquist's apartment without Rosenquist's knowledge. Rosenquist accepted the items and drove off.

On April 7, 1995, Steve Morrison and his girlfriend, Claire, visited Rosenquist. Rosenquist picked them up at the airport with his parents' car, drove them to his apartment, and parked the car in front of his apartment building. Appellant repeatedly phoned Rosenquist's apartment and then knocked at his door in the night. The next morning, Rosenquist discovered that several items were missing from his parents' locked car, including lecture notes, class rosters, library books, a novel, and a souvenir hat. However, the thief had not taken Claire's purse containing $200.

On April 21, 1995, Rosenquist noticed his vehicle registration, proof of insurance, warranty, and cassette player were missing from his locked car.

The next day, Rosenquist saw appellant enter the locked car and remove what turned out to be Rosenquist's UCLA parking permit.

On May 1, 1995, appellant approached Rosenquist as Rosenquist stood outside his car. Appellant tried to prevent Rosenquist from getting into the car, and following a struggle, appellant took Rosenquist's sunglasses from Rosenquist's face and ran away.

On May 2, 1995, appellant was arrested. Following the issuance of a warrant and a search of appellant's apartment, the police found several items taken without Rosenquist's permission from his old and new apartments and from his vehicles.

On July 16, 1995, appellant's father returned Rosenquist's library books, journals, and sunglasses.

### B. *Defense Evidence*

Appellant testified on his own behalf. According to appellant, he and Rosenquist became lovers following their meeting in May 1993. They had sex as many as 30 times, and Rosenquist gave appellant the key to his apartment. Rosenquist introduced appellant to "detailed role playing," which included infliction of humiliation, use of "vile threats," and attempts to scare each other. Whereas Rosenquist kept his end of the relationship ambiguous, appellant loved Rosenquist.

Prior to appellant's hospitalization in March 1994, appellant entered Rosenquist's apartment without his knowledge. He did not have the right to read Rosenquist's journals. When Rosenquist first learned that appellant had read his journals, he was upset but said, "Maybe you'll understand me better." Rosenquist never asked for the apartment key back. Following appellant's hospitalization, he continued to read the journals after Rosenquist fell asleep when, with Rosenquist's permission, he spent the night at Rosenquist's apartment.

In the summer of 1994, appellant believed that Rosenquist was withdrawing from him, and he discovered by reading the journals that Rosenquist had been unfaithful to him. When Rosenquist told him that he did not want to see appellant anymore, appellant felt that Rosenquist was sending mixed messages and that "from [their] past interactions" he could not determine whether "this wasn't again a kind of play."

After appellant's hospitalization, appellant entered Rosenquist's apartment only once without his knowledge. In early February 1995, appellant went into Rosenquist's apartment intending solely to read Rosenquist's journals. He discovered a story entitled "The Humiliation of Kyle," and believed the story to be about him because Rosenquist had called appellant "Kyle" in their role playing. Hurt by the story, appellant decided to remove and hold the journals until Rosenquist admitted his own emotional problems.

Appellant denied entering Rosenquist's vehicles and removing items without Rosenquist's permission. Regarding the items found by the police, he testified that either Rosenquist intentionally or inadvertently gave appellant the items.

## DISCUSSION

Appellant contends that (1) he was improperly convicted of both burglary and receiving stolen goods, (2) the trial court erred in denying his request for a jury instruction on the lesser related offense of trespass, and (3) his sentence constitutes cruel and unusual punishment. In a separately filed pro se opening brief, appellant also contends that (4) insufficient evidence supports the judgment, (5) the trial court improperly denied admission of exculpatory evidence, (6) appellant received ineffective assistance of counsel, and (7) the prosecutor engaged in prejudicial misconduct.

### A. Burglary and Receiving Stolen Goods

Appellant contends that he cannot be convicted of burglary and receiving stolen goods. We disagree.

In *People* v. *Bernal* (1994) 22 Cal.App.4th 1455 [27 Cal.Rptr.2d 839], the defendant made an analogous argument, complaining that the trial court erred in permitting him to be convicted of both burglary and petty theft, and then staying punishment for the petty theft pursuant to Penal Code section 654. (See 22 Cal.App.4th at pp. 1457-1458.) The *Bernal* court concluded that because burglary can be committed without committing a theft and theft is not a lesser included offense of burglary, ". . . the more sound analysis is to permit conviction of both crimes and apply Penal Code section 654 to avoid multiple punishment." (See *id.* at p. 1458.) Because burglary requires only unconsented entry with the *intent* to commit theft or another felony (see Pen. Code, § 459), and receiving stolen goods involves the knowing, receiving, concealing, or withholding of goods *obtained* by theft or extortion (see

Pen. Code, § 496, subd. (a)), appellant may be convicted of both crimes, subject to the provisions of section 654.

██ Appellant's contention to the contrary rests on *People v. Stewart* (1986) 185 Cal.App.3d 197 [229 Cal.Rptr. 445], and several subsequent cases. We are aware of a line of such cases stemming from *People v. Jaramillo* (1976) 16 Cal.3d 752 [129 Cal.Rptr. 306, 548 P.2d 706], in which our Supreme Court held that a defendant may not be convicted of receiving stolen goods and a violation of Vehicle Code section 10851, which "prohibits taking *or* driving a vehicle with intent to either permanently *or* temporarily deprive the owner of title *or* possession of, and *with or without* intent to steal the vehicle." (16 Cal.3d at p. 757, first italics added.) The court reasoned that because the defendant might have committed the section 10851 violation with the intent to steal the car, conviction for both crimes was proscribed by the principle that ". . . one may not be convicted of stealing and of receiving the same property. [Citation.]" (See 16 Cal.3d at pp. 755-757.) The court further concluded that a stay of punishment is not the appropriate remedy for such an improper dual conviction. (See *id.* at p. 757.)

██ Subsequent cases extended the *Jaramillo* reasoning to foreclose dual convictions for burglary and receiving stolen goods. (See *People v. Lawrence* (1980) 111 Cal.App.3d 630, 639 [169 Cal.Rptr. 245]; *People v. Perez* (1974) 40 Cal.App.3d 795, 800 [115 Cal.Rptr. 405].) The court in *People v. Stewart, supra,* 185 Cal.App.3d 197, cited by appellant, reluctantly followed this authority but observed in a footnote: "This rule has been applied in burglary and receiving stolen property cases even though theft of property is not an element of the crime of burglary [citation], and proof that the property was stolen by someone other than defendant is not an element of the crime of receiving stolen property [citation]. [Citations.] Were we to write upon a clean slate we might consider a different approach. Under Penal Code section 654 a course of conduct undertaken with a single intent and objective that violates more that one statute may be punished only once. [Citation.] Although a defendant may be convicted of both violations, punishment for one must be stayed. [Citation.] This principle has been applied in instances where the defendant has committed both burglary and robbery, and where he has committed burglary and grand theft. [Citations.] It would seem to follow that where a defendant has committed burglary, and has also committed acts [that constitute receiving stolen goods] . . . , it would be permissible to convict him of both violations but to stay the punishment for one offense." (*Id.* at p. 203, fn. 2.) In concluding that it is permissible to convict a defendant of burglary and petty theft, the *Bernal*

court cited the reasoning in this footnote and declined to follow the authority precluding convictions for both burglary and receiving stolen goods. (*People v. Bernal, supra*, 22 Cal.App.4th at p. 1458.)

In our view, it is plainly inconsistent to permit dual convictions for burglary and theft but bar dual convictions for burglary and receiving stolen goods. The *Jamarillo* reasoning appears to be inapplicable to dual convictions for burglary and receiving stolen goods because burglary, unlike violation of Vehicle Code section 10851, does not require the dispossession (by taking or driving) of property. (See *People v. Tatem* (1976) 62 Cal.App.3d 655, 658 [133 Cal.Rptr. 265] [burglary may be committed without committing theft]; *People v. Barrick* (1982) 33 Cal.3d 115, 134 [187 Cal.Rptr. 716, 654 P.2d 1243] [section 10851 is part of a statutory scheme dealing with the taking of an automobile without the owner's consent].) Accordingly, we find the reasoning in *Bernal* and in the *Stewart* footnote persuasive, and we decline to follow the authority cited by appellant.

The remaining issue concerns the application of Penal Code section 654. This section "bars multiple punishment for an indivisible course of conduct that violates more than one statute. [Citation.] Concurrent sentences for crimes based on one act or indivisible transaction constitute multiple punishment. [Citations.] The appropriate procedure is to eliminate the effect of the judgment as to the lesser offense insofar as the penalty alone is concerned. [Citations.]" (*People v. Lee* (1980) 110 Cal.App.3d 774, 785 [168 Cal.Rptr. 231].)

Here, the People ask us to correct the sentencing order to stay appellant's sentences for vehicular burglary, which now run concurrently with his sentence for receiving stolen goods. However, because we discern other errors that require a remand to the trial court, we conclude that the application of Penal Code section 654 should be resolved by the trial court on remand.

B.-G.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is reversed as to count 3 and the sentences imposed for the convictions for burglary and receiving stolen goods. The matter is remanded

*See footnote, *ante*, page 1247.

for determination of the application of Penal Code section 654 concerning the sentences imposed for the convictions for burglary and receiving stolen goods, and for any other resentencing that is necessary should the People not pursue a new trial on count 3. The judgment is affirmed in all other respects.

Vogel (C. S.), P. J., and Epstein, J., concurred.