Filed 12/13/13  In re Blake W. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re BLAKE W., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>BLAKE W.,<br><br>    Defendant and Appellant. | G048127<br><br>(Super. Ct. No. DL043630)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Gregory W. Jones, Judge.  Affirmed.

Sylvia Whatley Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Meagan J. Beale and William M. Wood, Deputy Attorneys General, for Plaintiff and Respondent.

In this juvenile court proceeding, appellant was placed on probation for committing burglary and possessing a controlled substance without a prescription. He contends the court erred in denying his request for deferred entry of judgment and failing to apply Penal Code section 654 in calculating his maximum period of confinement. We reject these contentions and affirm the judgment.

FACTS AND PROCEDURAL BACKGROUND

On September 6, 2012, appellant was among a group of teens drinking alcohol and smoking marijuana in the backyard of Janel M's house. Janel was not home at the time, but her son, who is developmentally disabled, was with the group. At some point, appellant and his friend David snuck into Janel's house and began looking for objects to steal. Among other things, they made off with a gold watch, video game equipment, a lockbox full of old medicine and two bottles of medication that were currently prescribed to Janel's husband, Ultram and Vicodin.

Later that day, the police questioned appellant about the incident, and he denied stealing anything from Janel's home. However, when David was interviewed, he admitted he and appellant took a variety of items from the house. Explaining their m.o., David said he distracted and kept an eye on Janel's mentally challenged son, while appellant rummaged through the house looking for things to steal.

The next day, the police were called to the home of one of appellant's friends in regard to an unrelated theft. When the officers arrived there, appellant was sitting next to a "glass marijuana bong" that he admitted owning. Appellant was also in possession of a burnt straw and five Ultram pills. When asked about the pills, appellant said he bought them that day from a friend with money he had stolen from his parents. He admitted he used drugs every day, and, although his preference was for prescription drugs, he used heroin if they were not available. The police arrested appellant and released him to his father.

2

The district attorney filed two separate petitions to declare appellant a ward of the juvenile court. (Welf. & Inst. Code, § 602.)[1] The first petition alleged appellant committed first degree burglary by entering Janel's house with the intent to steal (Pen. Code, §§ 459, 460, subd. (a)), and the second accused appellant of possessing a controlled substance without a prescription, which is a misdemeanor (Bus. & Prof. Code, § 4060). At the time the petitions were filed, in the fall of 2012, appellant had just turned 17 years old.

In January 2013, the district attorney notified the juvenile court appellant was eligible for the deferred entry of judgment program (DEJ), given that, inter alia, his alleged crimes were relatively minor and he had never been declared a ward of the court for a felony offense. (§ 790, subd. (a).) DEJ is akin to probation, except the supervision is generally less stringent, and if the minor completes the program, his charges will be dismissed and his arrest will be treated as if it never happened. (§§ 791, subd. (b), 793, subd. (c).) Although there is no dispute appellant was *eligible* for DEJ, eligibility is only the first prerequisite for admission into the program. A second – and necessary – condition is that the minor be found to be *suitable* for the program. (§ 791, subd. (b).)

To assist the court in making this determination, the probation department interviewed appellant and prepared a report on his suitability for DEJ. The interview took place on February 20, 2013, five and a half months after the alleged offenses. Appellant said he entered drug treatment the day after his arrest and had been clean and sober for 62 days. Under his current treatment program, he is required to participate in family, peer and individual counseling and attend Alcoholics and Narcotics Anonymous meetings. While admitting he used to be a "complete mess" and stole anything he could to support his drug habit, appellant said he felt confident in his sobriety and his ability to succeed in the DEJ program. He also said he had changed his circle of friends and

---

[1]     Unless noted otherwise, all further statutory references are to the Welfare and Institutions Code.

3

improved his relationship with his parents, both of whom are recovering alcoholics. Speaking to his future aspirations, appellant said he wants to complete high school and go on to community college.

The probation officer felt appellant was a suitable candidate for DEJ, given his progress in drug treatment. However, the trial judge rejected the probation officer's recommendation to place appellant in the DEJ program. At a hearing on the issue, the judge said he was concerned about the fact there were two separate petitions filed against appellant, and it appeared the burglary offense involved "planning, premeditation and conspiratorial activity[.]" However, the most troubling aspect of the case for the judge was what he described as appellant's "significant substance abuse history," which included not only the use of marijuana and prescription drugs, but heroin, as well.

While commending appellant for his progress in drug treatment thus far, the judge stated, "It has been my experience, from [being] involved in the criminal law . . . for countless years, that drug problems are not resolved in three . . . six . . . nine . . . or [twelve] months. I think [appellant] is going to need to be supervised and . . . have basically the assistance that comes from intensive supervision to deal with these issues in the future."

The judge told appellant, "Generally, the easiest part about dealing with substance abuse is when you are in the program. The hard part comes when you get out of [the] program because . . . what you're going to find happening [then] is all of your . . . old drug buddies . . . are going to be making contact with you . . . and . . . wanting to get high with you. They are going to want to be going out and get in trouble with you. When you're out of the program, when you don't have the rigid structure that program provides, those temptations are going to be real hard to resist. [¶] More people, I think, or perhaps an equal number of people fail and start using drugs again once they get out of

4

the program, as people fail who are actually in the program.  So that is the reason why I think that you need the supervision that regular wardship would provide."

Instead of placing appellant in the DEJ program, the court declared appellant a ward of the court and placed him on formal probation after he admitted the allegations against him.  As a condition of probation, the court ordered appellant to spend 60 days in juvenile hall.  However, the court stated it would suspend imposition of the 60-day term as long as appellant continued to do well in drug treatment.  The court also told appellant he could withdraw his plea admissions in one year, on March 4, 2014, if he complied with the terms of his probation.  The court felt this disposition would best serve the rehabilitative purpose of the juvenile justice system by helping appellant turn his life around.

I

Appellant contends the trial court erred in refusing to place him in the DEJ program.  We disagree.

When, as here, "the juvenile court denies a request for DEJ where the minor is statutorily eligible, we review the decision under the abuse of discretion standard. [Citation.]"  (*In re Damian M.* (2010) 185 Cal.App.4th 1, 5.)  Under that standard, we afford "considerable deference to the trial court provided [it] acted in accordance with the governing rules of law.  We presume that the court properly applied the law and acted within its discretion unless the appellant affirmatively shows otherwise.  [Citations.]" (*Mejia v. City of Los Angeles* (2007) 156 Cal.App.4th 151, 158.)  And we will not disturb the court's decision unless it "exceeds the bounds of reason and results in a miscarriage of justice.  [Citations.]"  (*Ibid.*)

As explained above, once a minor is eligible for DEJ, the juvenile court must assess whether he is suitable for that program.  Suitability turns on whether the minor would benefit from the less restrictive monitoring that comes with DEJ.  (*In re*

5

*Damian M., supra,* 185 Cal.App.4th at p. 5.) In making this determination, the court must consider the minor's education, treatment and rehabilitation needs, as well as any other relevant factors. (§ 791, subd. (b); Cal. Rules of Court, rule 5.800(d)(3).) While the probation department may be called upon to submit a recommendation on the issue, "the juvenile trial court has the ultimate discretion to rule on the minor's suitability for DEJ. [Citation.]" (*In re C.W.* (2012) 208 Cal.App.4th 654, 660.)

In assessing appellant's suitability for DEJ, one of the factors the juvenile court considered was that the district attorney had filed two petitions against him, one for each of his alleged crimes. However, because the crimes occurred a day apart, it appears they could easily have been charged in a single petition. Therefore, we do not place great weight on this aspect of the court's analysis.

However, we do agree with the juvenile court that appellant's alleged burglary offense evidenced planning and sophistication, which is a legitimate factor in deciding whether he would more likely benefit from formal probation than DEJ. (*In re Damian M., supra,* 185 Cal.App.4th at p. 5.) Indeed, the record shows appellant and his friend worked in cahoots to distract Janel's developmentally disabled son so they could pilfer as much prescription medicine and as many other valuables they could get away with. Based on this, the juvenile court could reasonably conclude appellant might be less amenable to rehabilitation than other juvenile offenders. (*Ibid.*)

Of course, the primary consideration informing the juvenile court's ruling was appellant's history of drug abuse. The facts reveal appellant was drinking alcohol and smoking marijuana before he and his friend decided to burglarize Janel's residence. And the following day, he was found in possession of prescription drugs and a "marijuana bong." Appellant told the police he stole money from his parents to buy the drugs, and he "smoke[s] . . . prescription drugs daily" when he has them. He also admitted he used heroin when he can't get his hands on any prescription drugs. And we

6

note that while he had been in drug programs for five-and-a-half months, he only claimed 62 days of sobriety. This is obviously an obstinate problem. Thus, it is abundantly clear appellant had a severe drug habit, and his drug use was leading to other problems.

This fact was not lost on the trial judge. Based on his extensive experience in dealing with juvenile drug offenders – and a prior career as an outstanding criminal defense attorney – the judge was aware of, and spoke directly to, the difficulties and temptations appellant would face along the road to rehabilitation. The judge's comments indicate he carefully weighed his options, as well as the particular circumstances presented, in deciding on what he believed to the most appropriate disposition for appellant's case. Although reasonable minds could differ on that issue, we cannot say the court's decision to deny appellant's request for DEJ was unreasonable or amounted to a miscarriage of justice. Indeed, it reflects an admirable willingness to apply original thinking and innovation to the probation department's report. Therefore, we find no abuse of discretion and uphold the court's decision to place appellant on probation.

## II

After placing appellant on probation, the court turned to the task of determining the maximum term of confinement appellant would face if he failed to comply with the terms and conditions of his probation. (§ 726, subd. (d).) The court calculated that term as six years for the burglary, plus two months for the misdemeanor drug offense. Appellant contends the court should have stayed sentence on the drug count in light of Penal Code section 654, but we find no reason to disturb the court's ruling.

Penal Code section 654 generally prohibits multiple punishment when the defendant is convicted of both burglary and possessing *the same* items that were taken in the burglary. (*People v. Jaramillo* (1976) 16 Cal.3d 752; *People v. Landis* (1996) 51 Cal.App.4th 1247.) Appellant argues that prohibition applies here because the

7

prescription pills he was charged with possessing were the same prescription pills he stole the day before during the burglary.

In so arguing, appellant admits this was a question of fact for the trial judge, and that by imposing separate sentences, the judge impliedly determined the prescription pills found in his possession were *not* the same ones he took from Janel's home the day before. (See *People v. Gaio* (2000) 81 Cal.App.4th 919, 935.) We review this ruling under the substantial evidence test, and in deciding whether substantial evidence exists to support it, we "consider the evidence in the light most favorable to respondent and presume the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Martin* (2005) 133 Cal.App.4th 776, 781.)

As to the source of the Ultram pills found in his possession, appellant points out the pills he stole from Janel's residence the previous day included a bottle of Ultram. According to appellant, this shows the pills were the same. However, when questioned about the pills found in his possession the day after the burglary, appellant told police he had purchased them from a friend that very day with money he had stolen from his parents. Either appellant was lying or the pills were the same.

Appellant contends his statement about how he acquired the pills was not credible in light of the fact he lied to the police about not being involved in the burglary. But considering appellant's statement about the pills was self-incriminating, the juvenile court could reasonably conclude it was true and that separate sentencing was therefore justified on the drug count. (See generally *People v. Spriggs* (1964) 60 Cal.2d 868, 874 ["a person's interest against being criminally implicated gives reasonable assurance of the veracity of his statement made against that interest"].) Suffice it to say, substantial evidence supports the juvenile court's decision to impose a two-month term on the drug count in calculating appellant's maximum term of confinement. We discern no reason to disturb that decision on appeal.

8

DISPOSITION

The judgment is affirmed.


BEDSWORTH, ACTING P. J.

WE CONCUR:


FYBEL, J.


IKOLA, J.